**Lodina CLYBURN, Plaintiff,**

Jerry W. Moore and Roger Hicks,
Plaintiffs–Appellants,

v.

Aundra Newell SHIELDS, former Associate Dean of Admissions, UBSOL, Law Services, Inc., American Bar Association, Defendants,

Barry B. Boyer, former Dean, State University of New York at Buffalo School of Law ("UBSOL"), R. Nils Olsen, Dean of UBSOL, Law School Admission Council, Inc., Jack Cox, Director of Admissions, UBSOL, Defendants–Appellees.

Docket No. 01–7707.

United States Court of Appeals,
Second Circuit.

March 29, 2002.

**554**

Jerry W. Moore, pro se, Buffalo, NY, for appellants.

Eric P. Doherty, Lakeview, NY, for Plaintiff–Appellant Roger Hicks.

Andrea Oser, Assistant Solicitor General; Eliot Spitzer, Attorney General of the State of New York, Albany, NY; Daniel Smirlock, Deputy Solicitor General, on the brief, for Defendants–Appellees Barry B. Boyer, R. Nils Olsen, and Jack Cox.

Mark A. Molloy; Susan C. Roney, on the brief, Nixon Peabody LLP, Buffalo, NY, for Defendant–Appellee Law School Admission Council, Inc.

Present: FEINBERG, STRAUB and KATZMANN, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Plaintiffs–Appellants Jerry W. Moore ("Moore"), *pro se,* and Roger Hicks ("Hicks") appeal from an order and judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Judge*) granting the defendants' Rule 12(b)(6) motion and dismissing the plaintiffs' complaint.

In their complaint, Moore and Hicks, African American males in their forties, allege that various officials at the University of Buffalo School of Law ("UBSOL") discriminated against them on the basis of their race, gender, and age in violation of Titles VI and IX of the Civil Rights Act (codified at 42 U.S.C. § 2000d and 20 U.S.C. § 1681 *et. seq.,* respectively), 42 U.S.C. §§ 1981 and 1983, and the Equal Protection Clause by denying them admission to UBSOL. The plaintiffs' primary allegation is that the defendants' reliance on the Law School Admissions Test ("LSAT") as a criterion for the plaintiffs' admission was discriminatory, as defendants were aware that reliance on the LSAT as an admissions criterion disadvantages African American applicants. Plaintiffs also allege that defendants Law School Admission Counsel, Inc. ("LSAC"), Law Services, Inc. ("LSI"), and the American Bar Association ("ABA") participated in this discriminatory practice by encouraging or requiring the use of the LSAT by accredited schools.

The UBSOL defendants moved to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The District Court, adopting the report and recommendation of the magistrate judge to whom the motion had been referred, granted the motion with respect to all defendants and entered judgment dismissing the complaint. We find that the complaint was properly dismissed.

■ Title VI prohibits intentional race-based discrimination by institutions that receive federal funds. *See* 42 U.S.C. § 2000d. The plaintiffs' complaint alleges that the UBSOL defendants use the LSAT "as a means to justify an 'illegitimate' form of *ongoing* racially discriminatory policy which has a 'disparate impact' on" African Americans. However, an actionable "[d]is-

criminatory purpose ... implies more than intent as volition or intent as awareness of consequences .... [it] implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (internal quotation marks omitted).

■ The complaint fails to set forth facts that would substantiate a theory that either the UBSOL defendants or LSAC, LSI, or the ABA intentionally used or administered the LSAT as a method of evaluating aptitude for law school for the purpose of discriminating against African American law school applicants. At best, the plaintiffs allege that the UBSOL defendants were aware that the LSAT disproportionately affects such applicants yet continued to use it as an admissions criterion. Even if the complaint can be read to allege that those defendants use the LSAT "because of" its adverse effect on African–American applicants, this bare allegation, without any facts alleged in support, is insufficient to state a claim for intentional discrimination. *Cf. Hayden v. County of Nassau*, 180 F.3d 42, 50–51 (2d Cir.1999); *Soberal–Perez v. Heckler*, 717 F.2d 36, 41–42 (2d Cir.1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984).

We note that although the plaintiffs style their claim as one for "disparate impact discrimination," the complaint does not purport to base its claims under Title VI upon a particular regulation promulgated thereunder that prohibits disparate impact discrimination. *See, e.g.,* 28 C.F.R. § 42.104(b)(2) (DOJ regulation prohibiting use of "criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race....."). Even had the complaint

done so, the Supreme Court recently held in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), that no private cause of action exists to enforce disparate impact regulations promulgated pursuant to Title VI.

■ We also reject the plaintiffs' contention that intentional discrimination may be inferred on the part of the university defendants from their failure to adhere to their own internal admissions policy, which allegedly minimizes the role of the LSAT as an admissions criterion for non-traditional applicants such as the plaintiffs. Moore and Hicks acknowledged in their complaint that the admissions policy merely provides that less emphasis be accorded to the LSAT for such applicants, and not that LSAT performance be disregarded altogether. The plaintiffs also acknowledged that their scores were ten to twenty points lower than UBSOL's "normal" cutoff. Because the defendants retained discretion to consider a non-traditional applicant's LSAT score in determining whether the applicant should be admitted, there was no suspect deviation from the admissions policy, and hence no basis to infer discrimination, merely because the plaintiffs' LSAT scores were allegedly the basis for the rejection of their applications.

■ Similar to Title VI, claims of race-based discrimination under the Equal Protection Clause and 42 U.S.C. § 1981 also require that intentional discrimination be alleged in a non-conclusory fashion. *See General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Therefore, the plaintiffs' claims under these provisions also fail.

■ In addition, the plaintiffs' allegations that their applications were rejected because of their age and gender are wholly conclusory, as they do not allege any factu-

al basis for these claims other than that they are forty-year-old males who were denied admission to the law school. We also reject as frivolous the plaintiffs' contention that the Equal Protection Clause requires that in-state minority residents be given admissions preference over out-of-state residents.

We have examined all of the Plaintiffs Appellants' remaining contentions and find them to be without merit. For the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.