Herskowitz v State of New York (2023 NY Slip Op 06808)

Herskowitz v State of New York

2023 NY Slip Op 06808

Decided on December 28, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 28, 2023

Before: Manzanet-Daniels, J.P., Oing, Moulton, Shulman, Rosado, JJ. 

Index No. 153247/22 Appeal No. 1226 Case No. 2023-00700 

[*1]Craig Herskowitz, Plaintiff-Appellant,
v
The State of New York, Defendant-Respondent.

Bergstein and Ullrich, New Paltz (Stephen Bergstein of counsel), for appellant.
Arkin Solbakken LLP, New York (Deana Davidian of counsel), for respondent.

Order, Supreme Court, New York County (Dakota D. Ramseur, J.), entered January 30, 2020, which granted defendant's motion to dismiss, unanimously modified, on the law, to reinstate plaintiff's second cause of action for retaliatory termination under the New York State Human Rights Law, and otherwise affirmed, without costs.
In order to state a claim for retaliation under the New York State Human Rights Law (Executive Law § 296), a plaintiff must show that (1) he was engaged in a protected activity, (2) his employer was aware that he participated in such activity, (3) he suffered an adverse employment action based upon his activity, and (4) there is a causal connection between the protected activity and the adverse action (Harrington v City of New York, 157 AD3d 582, 585 [1st Dept 2018], citing Forrest v Jewish Guild for the Blind, 3 NY3d 295, 312-313 [2004]). Plaintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage (Thomas v Mintz, 182 AD3d 490, 490 [1st Dept 2020]; Petit v Department of Educ. of the City of N.Y., 177 AD3d 402, 403 [1st Dept 2019]). On appeal, the sole contested element is whether plaintiff sufficiently pleaded a causal connection between the protected activity of his April 1, 2021 interview with the New York Attorney General's Office, during which he corroborated sexual harassment allegations against former Governor Andrew Cuomo, and his allegedly retaliatory termination from the Governor's Office Executive Chamber in August of that same year.
"The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action'" (Summa v Hofstra Univ., 708 F3d 115, 127-128 [2d Cir 2013], quoting Cifra v Gen. Elec. Co., 252 F3d 205, 217 [2d Cir 2001]).[FN1] Courts have "'not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action. This has allowed [the Second Circuit] to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases'" (Summa, 708 F3d at 128, quoting Espinal v Goord, 558 F3d 119, 129 [2d Cir 2009]). Here, the four-month period between plaintiff's interview and termination easily falls within the acceptable temporal range to establish a causal connection (see Rasmy v Marriott Intl., Inc., 952 F3d 379, 391-392 [2d Cir 2020][five months]; Summa, 708 F3d at 128 [four months and seven months for separate retaliatory actions]; Espinal, 558 F3d at 129 [six months]; Collins, 59 Misc 3d at 1054 [four months]).
Further, when analyzing the timing and context of retaliatory actions, courts also consider whether the employer "waited to exact [its] retaliation at an opportune time" in order to have an explanation for [*2]the action (Espinal, 558 F3d at 129). Additionally, "[q]uestions regarding the time gap and causal connection of an alleged retaliatory termination may entail special consideration of the size and complexity of a defendant employer, where termination of employment may involve multiple levels of decisionmakers, as well as the nature of plaintiff's claims" (Rasmy, 952 F3d at 391).
The additional circumstances surrounding plaintiff's termination support an inference that it was done in retaliation for plaintiff's corroboration of allegations of sexual harassment against former Governor Cuomo. As stated in the complaint, at all relevant times plaintiff was employed as an assistant counsel in the Governor's Office Executive Chamber. On April 1, 2021, plaintiff corroborated an instance of sexually harassing behavior by former Governor Cuomo during an interview with the Attorney General's office. The Attorney General's report finding that former Governor Cuomo had committed sexual harassment was issued four months later, on August 3 (AG Report). The complained-of conversation between plaintiff and a female executive assistant (EA), during which plaintiff jokingly responded to the EA's indignation regarding former Governor Cuomo's failure to make sexual advances towards her, occurred the same day. Three days later, plaintiff was questioned by the Governor's Office of Employee Relations (GOER) regarding his allegedly sexually harassing behavior towards the EA. During this interview, the GOER officer disregarded plaintiff's attempts to contextualize the complained-of actions, his friendly working relationship with the EA, and his recollection of a previous, highly inappropriate sexual comment made by the EA.
Plaintiff received a notice of termination for violating the Executive Chamber's sexual harassment policy on August 12, six days after the GOER interview and only nine days after the AG Report and interaction with the EA. Plaintiff was terminated on August 25; defendant provided plaintiff with a box containing his belongings, which contained a handwritten note stating that he "had it coming." Finally, to date defendant has not responded to plaintiff's November 2021 FOIL request for his personnel records or issued a determination regarding his August 23, 2021 complaint to GOER regarding its rushed investigation and disproportionately heavy punishment to the conduct alleged, effectively stonewalling plaintiff's attempts to obtain defendant's justification for his termination.
These facts, together with the temporal connection and the questionable nature of the allegations upon which defendant's findings of sexual harassment were premised, sufficiently pleaded that, in the immediate aftermath of the AG Report's publishing, plaintiff was terminated in retaliation for his cooperation in the Attorney General's investigation against former Governor Cuomo (see Rasmy, 952 F3d at 392-393 [denying defendant summary judgment on retaliation claim where the termination [*3]was premised upon unwitnessed altercation with racist, caustic coworker, five months after protected activity]; Espinal, 558 F3d at 129 [reversing summary judgment for defendant officers and finding it plausible that officers waited until opportune moment — plaintiff's engagement in fight with other inmate — to inflict retaliatory attack, six months after protected activity]). Accordingly, we reverse the lower court's dismissal of plaintiff's retaliation claim.
However, despite the lenient pleading standard governing employment discrimination cases, the complaint fails to state a cause of action for sex discrimination under the New York State Human Rights Law because it contains no factual allegations giving rise to an inference of discrimination (see Brown v City of New York, 188 AD3d 518, 519 [1st Dept 2020]). Plaintiff's allegation that defendant afforded more favorable treatment to the EA for the same misconduct is unsupported by any facts suggesting that the EA was similarly situated to plaintiff in all material respects (Shah v Wilco Sys., Inc., 27 AD3d 169, 177-178 [1st Dept 2005], lv dismissed in part, denied in part 7 NY3d 859 [2006]; Shumway v United Parcel Serv., Inc., 118 F3d 60, 64 [2d Cir 1997]). First, plaintiff and the EA had different job titles and duties. Second, plaintiff alleges that although he perceived the EA's comments as friendly workplace banter, she perceived his comments as objectionable; therefore, there was no complaint to investigate with respect to the EA's conduct (Shumway, 118 F3d at 64; Hill v Rayboy-Brauestein, 467 F Supp 2d 336, 356 [SD NY 2006]; Thomas, 182 AD3d at 490). However, the alleged banter between plaintiff and the EA is relevant, and thus discoverable, for the reinstated retaliation claim.
We have considered plaintiff's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 28, 2023

Footnotes

Footnote 1: Federal retaliation claims under Title VII are subject to the same standards as those of the New York State Human Rights Law and therefore highly instructive as to the claim at bar (Banks v General Motors, LLC, 81 F4th 242, 275 [2d Cir 2023]; Collins v Indart-Etienne, 59 Misc 3d 1026, 1052 [Sup Ct, Kings County 2018]).